**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00405-NYW

BILLY F. MAY,

      Plaintiff,

v.

JUAN SEGOVIA, and
FRANK CORDOVA,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

      This matter comes before the Court on Defendants Juan Segovia and Frank Cordova's Motion to Dismiss Second Amended Complaint (the "Motion to Dismiss"). [#59, filed March 21, 2016]. The Motion to Dismiss is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated June 3, 2015 [#25]. The Court has carefully reviewed the Motion to Dismiss and related briefing, the entire case file, and the applicable case law, and has determined that oral argument will not materially assist in the resolution of this motion. Accordingly, the Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**.

### PROCEDURAL AND FACTUAL BACKGROUND

      The Court previously recounted the procedural history and factual background of this matter in its January 19, 2016 Opinion and Order, *see* [#41], and therefore, it will only be

discussed as it pertains to the instant Motion to Dismiss.  Plaintiff Billy May ("Plaintiff" or "Mr. May") filed a *pro se* prisoner complaint in this case on February 27, 2015, while incarcerated at the Federal Prison Camp ("FPC") in Florence, Colorado.[1]  [#1].  At the court's direction to refile using the appropriate form, Mr. May filed an Amended Complaint on March 16, 2015, asserting claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  [#4].  The Honorable Lewis T. Babcock issued an order to dismiss in part and to draw the case on March 19, 2015.  [#7].  Judge Babcock dismissed Plaintiff's claims against the Federal Bureau of Prisons ("BOP"), as barred by sovereign immunity, and drew Plaintiff's claims against Defendants George Santini and Frank Cordova to the undersigned Magistrate Judge.  *See* [*id.* at 2].

On January 19, 2016, this Magistrate Judge issued an Opinion and Order addressing several pending motions in this matter, including, *inter alia*, Plaintiff's Motion for Leave of Court to File a First (sic) Amended Complaint [#31].  *See* [#41].  By this Order, Plaintiff's Second Amended Complaint became the operative Complaint in this matter.  [#42].  In addition, the court denied Plaintiff's Motion for Summary Judgment [#14]; denied as moot Defendants Cordova and Santini's Motion to Dismiss [#23] and Defendant Cordova's Motion to Dismiss [#32]; and denied Plaintiff's Motion for a Hearing Regarding Sanctions for the Bureau of Prisons Retaliatory Action [#35].  [#41].

The basis of Plaintiff's claims in the operative Complaint arise from the January 2, 2015, twenty-four (24) hour lockdown of all FPC inmates, and from his placement in the Special Housing Unit ("SHU") after he refused to take Ivermectin, a medication used to treat scabies.

---

[1] Since filing this action, Plaintiff was released from BOP custody.  *See* [#40].

*See* [#42 at ¶ 12, 23–24].   Mr. May appears to allege three claims[2] against Defendant Frank Cordova ("Defendant Cordova" or "Mr. Cordova"), a certified nurse practitioner, and Defendant Juan Segovia ("Defendant Segovia" or "Mr. Segovia"), the former Camp Administrator of FPC.[3] [#42 at ¶¶ 2–3].

First, Plaintiff alleges that Defendants Cordova and Segovia (collectively, "Defendants") violated the Eighth Amendment's prohibition on cruel and unusual punishment when BOP officials instituted a twenty-four-hour lockdown of all FPC inmates.   *See* [#42 at ¶¶ 12–13, 15–16].   The lockdown was an apparent response to a scabies outbreak at FPC; however, according to Plaintiff, BOP's Lice and Scabies Protocol Clinical Practice directs BOP officials to isolate infected inmates in a single cell, but has no requirement to lockdown *all* inmates.   *See* [*id.* at ¶ 11].   Plaintiff continues that, because of the lockdown, BOP officials suspended visitation for FPC inmates, violated "well established case law that requires inmates receive proper meals and allowed at least one hour per day to leave their cell," and had no legitimate penological reason for doing so.   [*Id.* at ¶¶ 12, 13, 16].

Second, Plaintiff alleges that the BOP violated the Equal Protection Clause, because during the lockdown, it treated certain groups of prisoners differently.   [*Id.* at ¶ 17].   Specifically, the BOP provided medical treatment only to infected inmates and those who worked at FPC and

---

[2] Defendants argue in their Motion to Dismiss that Plaintiff alleges only two claims against them; however, because Plaintiff proceeds *pro se*, the Court construes his pleadings liberally and interprets the operative Complaint as levying three constitutional claims against Defendants.   *See See Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (directing courts to construe *pro se* pleadings liberally, but to not act as the *pro se* litigant's advocate).

[3] Plaintiff's Second Amended Complaint dismissed George Santini as a Defendant, added Juan Segovia as a Defendant, and eliminated his claim regarding access to Benadryl and an EpiPen. *See* [#31; #31-1].

allowed the working inmates to leave their cells for work, but did not treat uninfected inmates and kept those inmates locked-down for the entire twenty-four-hour period. [*Id.*]. Plaintiff avers that the BOP's motivation for this discriminatory practice "[was] obvious, the BOP needed healthy inmates to provide labor necessary to support the food service, sanitation and laundry functions at the [FPC], including feeding the BOP personnel." [*Id.*].

Finally, Plaintiff alleges that Defendants violated his due process rights by placing him in the SHU in retaliation for his refusal to take Ivermectin, despite his previous allergic reaction to the drug. [*Id.* at ¶¶ 25–28]. Plaintiff maintains that his placement in the SHU violated established BOP policy that allows inmates to refuse certain medical treatments and, that during his twenty-eight (28) day detention in the SHU, he received no hearing regarding this detention. [*Id.* at ¶¶ 25, 28, 30]. Mr. May's requested relief includes immediate release from incarceration and damages of $10,000 per day for each day that he was wrongfully incarcerated in the SHU.[4] [*Id.* at 4].

Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint on March 21, 2016. [#59]. First, Defendants argue for dismissal of Plaintiff's claims against Defendant Cordova under Rule 12(b)(1), because Defendant Cordova is immune from *Bivens* suits under the Public Health Service Act. [*Id.* at 3]. In addition, Defendants argue that they are entitled to qualified immunity and, accordingly, the Court should dismiss Plaintiff's operative Complaint under Rule 12(b)(6). [*Id.* at 3]. At the March 22, 2016 Status Conference, the Court directed Mr. May to file his response by April 22, 2016. *See* [#60]. Plaintiff filed his response

---

[4] Because Mr. May is no longer incarcerated, any request for injunctive relief is moot. In addition, Judge Babcock, in his order to dismiss in part and to draw the case, clearly held that sovereign immunity barred injunctive relief, whether it be against the BOP or its subordinates. *See* [#7 at 2].

on April 21, 2016, and argues against dismissal, because genuine factual disputes exist as to all of his claims. [#61]. Defendants filed a reply on April 26, 2016 [#62], and the Motion to Dismiss is ripe for resolution.

## LEGAL STANDARD

### I. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)). Under Rule 12(b)(1), a court may dismiss a complaint for lack of subject-matter jurisdiction. Doing so is not a determination on the merits of the case; rather, it is a decision that the court lacks the authority to adjudicate the action. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court that lacks jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Id.* Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms:  a facial attack or a factual attack.  *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."  *Holt*, 46 F.3d at 1002.  Mere conclusory allegations of jurisdiction are insufficient.  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  Nevertheless, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."  *Id.*  As explained in *Holt v. United States*, "the jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case."  46 F.3d at 1002.

## II.    Rule 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949 (2009).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted).  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.*  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.   Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).  The doctrine applies to government officials in their individual, as opposed to official, capacity, and does not attach to government entities. *See Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005).

"To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant[s] plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (citation omitted); *accord Ramirez v. Dep't of Corrs., Colo.*, 222 F.3d 1238, 1241 (10th Cir. 2000) (holding that a similar standard applies in the context of a Rule 12(c) motion, and that courts accept only well-pleaded factual allegations,

not mere conclusions).   Plaintiff's Second Amended Complaint need not contain all the necessary factual allegations to sustain a conclusion that Defendants violated clearly established law.   *See Robbins*, 519 F.3d at 1249 (recognizing that such a heightened pleading standard is not required) (quoting *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997)).   However, the operative complaint must satisfy the minimum pleading requirements, as articulated in *Twombly* and discussed above.   *Id.*

## ANALYSIS

### I.   Plaintiff's Claims Against Defendant Cordova

As mentioned, Plaintiff levies three claims against Defendants for their alleged violations of his constitutional rights.   Specifically, Defendants:   (1) violated his Eighth Amendment right to be free from cruel and unusual punishment; (2) violated his Fourteenth Amendment right to equal protection; and (3) violated his Due Process right.   *See, e.g.*, [#42 at ¶¶ 15, 17, 30]. Defendants assert that Defendant Cordova, as a commissioned Public Health Service ("PHS") officer, is absolutely immune from *Bivens* suits under the Public Health Service Act, 42 U.S.C. § 233.   [#59 at 5].   According to Defendants, Plaintiff's claims all arise from Defendant Cordova's performance of medical or related functions within the scope of his employment.   [*Id.* at 5–6].   Therefore, the Court should dismiss Plaintiff's claims against Defendant Cordova for lack of subject-matter jurisdiction under Rule 12(b)(1).   [*Id.*].

The Supreme Court, in *Hui v. Castaneda*, held that the plain language of section 233(a) of the Public Health Service Act granted PHS officers absolute immunity from personal liability under *Bivens* for harms arising out of conduct occurring within the scope of their employment. 559 U.S. 799, 802 (2010); *see also* 42 U.S.C. § 233(a).   Further, the Supreme Court held that the

Federal Tort Claims Act ("FTCA") is the exclusive remedy "for any personal injury caused by a PHS officer or employee performing a medical or related function 'while acting within the scope of his office or employment.'" *Hui*, 559 U.S. at 801–02, 806 (holding that section 233(a) bars all actions against PHS officers and limits recovery for such conduct to suits against the United States under the FTCA).

Here, Defendants attach Defendant Cordova's Declaration to their Motion to Dismiss in which Defendant Cordova attests to being a commissioned PHS officer since October 20, 1999, that he served as Assistant Health Service Administrator at FPC at all times relevant to this action, and that all of his interactions with Plaintiff occurred within the scope of his employment as a PHS officer. *See* [#59-1 at ¶¶ 1–2].[5]  Plaintiff has not controverted this Declaration. Therefore, Defendant Cordova, as a PHS officer, is immune from Plaintiff's constitutional claims under section 233(a) of the Public Health Service Act.[6]  *See Freeman v. Vineyard*, No. 10-CV-02690-MSK-CBS, 2012 WL 1813119, at *6 (D. Colo. May 18, 2012) (dismissing for lack of subject-matter jurisdiction the plaintiff's claims against PHS officers under section 233(a), because the Attorney General certified that these officers were acting within the scope of their employment).  Accordingly, the Court **DISMISSES without prejudice** Plaintiff's claims against Defendant Cordova for lack of subject-matter jurisdiction. *See Brereton v. Bountiful City*

---

[5] Under Rule 12(b)(1), the Court may consider declarations to resolve jurisdictional issues. *See Holt*, 46 F.3d at 1214.

[6] In at least two other actions, courts within this District have concluded that Defendant Cordova is a PHS officer entitled to absolute immunity from *Bivens* suits. *See, e.g., Morris v. Berkebile*, No. 14-cv-01296-KLM, 2015 WL 5474469, at *5 (D. Colo. Sept. 18, 2015) ("As a Public Health Service employee, Defendant Cordova is entitled to absolute immunity from Plaintiff's constitutional claims."); *Custard v. Allred*, No. 13-cv-02296-REB-CBS, 2015 WL 328626, at *7 (D. Colo. Jan. 26, 2015), *report and recommendation adopted*, No. 13-CV-02296-REB-CBS, 2015 WL 1255492 (D. Colo. Mar. 16, 2015) (holding same).

*Corp.*, 434 F.3d 1213, 1216–17 (10th Cir. 2006) (recognizing that dismissal for lack of subject-matter jurisdiction is without prejudice, because a court without jurisdiction cannot make any determinations on the merits of the underlying claim).

## II.     Plaintiff's *Bivens* Claims Against Defendant Segovia

A *Bivens* action—the federal analog to a section 1983 suit—provides a "private action for damages against federal officers" that violate certain constitutional rights. *Iqbal*, 556 U.S. at 675. Such a remedy is available only against federal officials in their individual capacity. *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009). Further, a defendant's personal participation in the constitutional deprivation is an essential element of any *Bivens* claim. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (explaining, "common to all . . . *Bivens* claims is the requirement that liability be predicated on a violation traceable to a defendant-official's 'own individual actions.'") (citation omitted). This requires Mr. May to demonstrate an affirmative link between the alleged constitutional violation and Defendant Segovia's participation, control or direction, or failure to supervise. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quotations and citations omitted).

### A.     Plaintiff's Cruel and Unusual Punishment Claim

To be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement, Mr. May must establish that Defendant Segovia knew of and disregarded the excessive risk the twenty-four-hour lockdown posed to Plaintiff's health or safety. *Castillo v. Day*, 790 F.3d 1013, 1017 (10th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, the court will find an Eighth Amendment violation only when the alleged deprivation is "objectively, sufficiently serious, and the prison official acts with

deliberate indifference to inmate health or safety." *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (internal quotations and citation omitted). The alleged deprivation is "sufficiently serious" if it deprives the inmate of the "minimal civilized measure of life's necessities," *i.e.*, adequate food, clothing, shelter, medical care, and safety. *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (explaining that restrictive and even harsh conditions do not constitute Eighth Amendment violations) (citations omitted). In addition, the prison official must have a "sufficiently culpable state of mind." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998).

Plaintiff contends that the twenty-four-hour lockdown on January 2, 2015, instituted by BOP officials, constituted cruel and unusual punishment. *See* [#42 at ¶ 15]. Specifically, the BOP "indefinitely cancelled all visitation for FPC inmates," and "violated well established law that requires inmates receive proper meals and allowed at least one hour per day to leave their cell." [*Id.* at ¶¶ 12, 16]. In addition, Plaintiff alleges, BOP had no legitimate penological reason for doing so. [*Id.* at ¶¶ 13, 14, 16].

Defendants argue for dismissal of Plaintiff's Eighth Amendment claim, because Defendant Segovia is entitled to qualified immunity for two reasons.[7] *See* [#59 at 10]. First, Defendants argue that Plaintiff fails to allege Defendant Segovia's personal participation in the alleged deprivation. [*Id.* at 11]. Second, Defendants aver that Plaintiff fails to allege both the objective and subjective components of an Eighth Amendment "conditions of confinement" claim. [*Id.* at 11]. For the following reasons, the court respectfully agrees.

---

[7] Defendants assert that both Defendant Cordova and Defendant Segovia are entitled to qualified immunity; however, because the Court concludes that it lacks subject-matter jurisdiction over Defendant Cordova, it addresses only Defendant Segovia's entitlement to qualified immunity.

As mentioned, to succeed on a *Bivens* claim, the plaintiff must demonstrate the prison official's personal participation in the alleged constitutional deprivation. *Pahls*, 718 F.3d at 1225. Here, Plaintiff's Second Amended Complaint explicitly attributes the twenty-four-hour lockdown to BOP officials. Nowhere in the operative complaint does Plaintiff allege that Defendant Segovia personally participated in the lockdown decision or the lockdown implementation. Plaintiff mentions only the BOP and unnamed BOP officials with respect to the twenty-four-hour lockdown and alleged constitutional deprivations associated with it. *See, e.g.*, [#42 at ¶¶ 12, 16, 17]. Consequently, Plaintiff fails to allege Defendant Segovia's personal participation in the twenty-four-hour lockdown. *See Dodds v. Richardson*, 614 F.3d 1185, 1197– 98 (10th Cir. 2010) (holding that section 1983 and *Bivens* claims require personal participation by the named defendant(s) in the alleged constitutional deprivation).

In addition, the Court also concludes that Plaintiff fails to sufficiently allege that the twenty-four-hour lockdown constituted a sufficiently serious deprivation, or that Defendant Segovia consciously disregarded the excessive risk the twenty-four-hour lockdown posed to Mr. May's health or safety. To start, although Plaintiff alleges that the lockdown interfered with inmates receiving "proper meals," he also alleges that certain inmates were released from the lockdown to "prepar[e] food for BOP personnel and the prison inmates." [#42 at ¶ 12; *id.* at ¶ 17]. Thus, it is not entirely clear from Plaintiff's Complaint whether the lockdown actually interfered with FPC inmates receiving their daily meals.

Next, Plaintiff contends that the BOP indefinitely cancelled visitation for all inmates and required all inmates to remain in their cell for twenty-four hours straight. [*Id.* at ¶¶ 12, 16]. However, guidance from this Circuit and others suggests that confining inmates to their cells for

twenty-four hours per day or suspending visitation, even for extended durations, does not constitute sufficiently serious deprivations. *See, e.g.*, *Ajaj v. United States*, 293 F. App'x 575, 582–84 (10th Cir. 2008) (holding that an inmate's confinement to his cell for twenty-three hours per day in extreme isolation does not constitute a sufficiently serious deprivation); *Ricco v. Conner*, 146 F. App'x 249, 255 (10th Cir. 2005) (holding that a five-year restriction on an inmate's visitation privileges does not constitute a sufficiently serious deprivation); *Caldwell v. Miller*, 790 F.2d 589, 600–01 (7th Cir. 1986) (holding that an inmate's confinement to his cell for twenty-four hours per day for approximately one month did not violate the Eighth Amendment). Moreover, from the face of the Second Amended Complaint, it appears that at most, the alleged deprivations lasted only for the twenty-four-hour lockdown. *See Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1188 (10th Cir. 2003) (explaining that the duration of the deprivation, in addition to its severity, is relevant to the court's inquiry). Thus, the Court concludes, based on Plaintiff's Second Amended Complaint, that the twenty-four-hour lockdown did not constitute a sufficiently serious deprivation.

Lastly, Plaintiff fails to allege that Defendant Segovia knew of and consciously disregarded an excessive risk to his health or safety. Instead, Plaintiff attributes his Eighth Amendment claim solely to the actions of the BOP and unnamed BOP officials. *See* [#42 at ¶ 12]. Moreover, Mr. May cannot establish deliberate indifference simply because Defendant Segovia should have known about the risk of harm. *See Barney*, 143 F.3d at 1310 (citation omitted). Accordingly, Defendant Segovia is entitled to qualified immunity and the Court **DISMISSES** Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Segovia. *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1251 (D. Colo. 2011) (holding that the

defendants were entitled to qualified immunity on the plaintiff's Eighth Amendment claim, because the plaintiff failed to allege that the conditions of confinement deprived him of life's most basic needs or that the defendants were deliberately indifferent to any risk to his health or safety).

### B.     Plaintiff's Equal Protection Claim

"An equal protection violation occurs when the government treats someone differently than another who is similarly situated."  *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (holding as meritless the plaintiff's equal protection claim, because the defendants had a rational basis for segregating the plaintiff from general population).  For Mr. May to succeed on an equal protection claim, he must demonstrate that he was "similarly situated" to other inmates who Defendants treated differently, and that this difference in treatment "was not reasonably related to legitimate penological interests."  *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). Further, if the classification does not implicate a fundamental right or a protected class, the classification is subject only to "rational-basis review" and "must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320–21 (1993) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  *See also Hill v. Pugh*, 75 F. App'x 715, 720 (10th Cir. 2003) (explaining that the classification of prisoners "'is accorded a strong presumption of validity'" and rejecting an inmate's equal protection challenge to a classification decision) (quoting *Heller*, 509 U.S. at 319).   Because Mr. May proceeds *pro se*, the Court construes the allegations in paragraph seventeen of his operative Complaint as asserting an equal protection claim against Defendants. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   And, although Defendants do not

interpret (nor challenge) Plaintiff's operative Complaint as such, the Court nonetheless addresses and dismisses the claim. *See Curley v. Perry*, 246 F.3d 1278, 1282–85 (10th Cir. 2001) (holding that a court may *sua sponte* dismiss an inmate's complaint under § 1915(e)(2)(B)(ii) and Rule 12(b)(6) when it is patently obvious that she could not prevail on the facts alleged, and amendment would be futile).

Plaintiff alleges that the BOP violated his right to equal protection when, during the lockdown, it provided medical treatment to only those inmates infected with scabies and those who worked for FPC. [#42 at ¶ 17]. Plaintiff continues, "[t]he reason for the discriminatory practice is obvious, the BOP needed healthy inmates to provide labor necessary to support the food service, sanitation and laundry functions at [FPC], including feeding the BOP personnel." [*Id.*]. In support of this contention, Mr. May cites to *Wolf v. McDonnell* 418 U.S. 539, 556 (1974), presumably for the Supreme Court's recognition that "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on *race*." (emphasis added).

Here, however, Plaintiff does not allege that the BOP treated inmates differently on the basis of a suspect classification, *i.e.*, race, alienage, or national origin. *See generally Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002) (holding that strict scrutiny applies only when the government's classifications target a suspect class or involve a fundamental right). Nor does the challenged classification implicate a fundamental right. *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1110 (10th Cir. 2008). Rather, the BOP allegedly treated inmates infected with scabies and inmates who worked for FPC, but did not treat the

remaining inmates.   [#42 at ¶ 17].[8]   Ultimately, the Court concludes that Plaintiff's equal protection claim fails for two reasons.

First, Plaintiff appears to allege this claim against the BOP, not the named Defendants. Moreover, Judge Babcock dismissed the BOP as a Defendant on sovereign immunity grounds. *See* [#7].   Second, although Plaintiff contends that the reason for discriminatory treatment is "obvious," the Court respectfully disagrees.   By his own allegations, the BOP, during the lockdown, treated inmates infected with scabies and those who worked in food, sanitation, and laundry services at FPC, presumably to maintain daily operations of the facility.   *Cf. Doe v. Heil*, 781 F. Supp. 2d 1134, 1140 (D. Colo. 2011) (holding that legitimate penological interests include rehabilitation, security, and deterrence).   However, there is no allegation, except for Plaintiff's insinuation that the BOP allowed working inmates out during the lockdown to also prepare meals for BOP personnel, to suggest that the BOP did not have a rational basis for treating infected and working inmates differently.   *See Bondurant v. Vastbinder*, No. 1:04-1278-T-AN, 2006 WL 903723, at *4 (W.D. Tenn. Apr. 6, 2006) (dismissing Mr. Bondurant's equal protection claim based on his unsubstantiated allegations that the defendant's treated inmates differently in terms of work privileges, because he failed to allege that the disparate treatment was not reasonably related to legitimate penological interests).   Accordingly, the Court **DISMISSES** Plaintiff's equal protection claim for failure to state a claim.   *See Curley*, 246 F.3d at 1282–85.

---

[8] The Court notes, however, that Plaintiff also alleges that on at least two other occasions the BOP required *every* inmate to take Ivermectin to treat the scabies outbreak.   *See* [#42 at ¶¶ 20, 22, 23–24].

### C.      Plaintiff's Due Process Claim

Mr. May alleges that Defendants violated his Due Process rights by placing him in the SHU, without a hearing, for 28 days due to his refusal to take Ivermectin.  *See* [#42 at ¶¶ 22–23, 25–27, 30].[9]  Specifically, Mr. May avers that on or about January 8, 2015, Defendants required for a second time that every inmate take Ivermectin to treat scabies.  [*Id.* at ¶ 23].  At this time, Mr. May again refused to take the Ivermectin because of his previous allergic reaction to the medication, but that Defendants Cordova and Segovia threatened to send him to the SHU if he refused to take the medication.  [*Id.* at ¶¶ 23, 25–26].  Ultimately, because of his refusal to take the Ivermectin, Defendants physically removed him from the FPC to the SHU.  [*Id.* at ¶¶ 23, 30].  According to Mr. May, upon his refusal to take Ivermectin, his due process rights should have been protected by allowing him a hearing rather than forcing him into the SHU without any recourse for him to get out other than taking the medication.  *See* [#42 at ¶¶ 23, 25–32].

Defendants argue for dismissal of Plaintiff's Due Process claim, because each is entitled to qualified immunity.  [#59 at 7].  Specifically, Plaintiff fails to allege Defendant Cordova's personal participation in placing Plaintiff in the SHU and because Plaintiff's confinement in the SHU did not violate a clearly established constitutional right.  [*Id.* at 7–8].  Because the Court already concluded that it lacks jurisdiction over Defendant Cordova, the Court focuses on Defendants' second argument.

---

[9] Mr. May apparently bases his constitutional claim on the Supreme Court's decision in *Washington v. Harper*, 494 U.S. 210 (1990).  *Washington v. Harper* recognizes that "the forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty," thus, triggering the protections of the Due Process Clause.  *Id.* at 221–22.  However, Plaintiff's case is inapposite, as Defendants never forced him to take Ivermectin; rather, Defendants allowed Mr. May to refuse the medication, but placed him in the SHU for his refusal.  Nevertheless, the Court considers whether Plaintiff states a plausible Due Process claim against Defendants for placing him in the SHU without a hearing.

In determining whether Defendants violated Mr. May's Due Process rights, the Court must determine:  "(1) did [Plaintiff] possess a protected interest such that the due process protections were applicable; and, if so, then (2) was [Plaintiff] afforded an appropriate level of process." *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (quoting *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011)).  However, prisoners retain only a "narrow range of protected liberty interests." *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) (quotations and citation omitted); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").  Accordingly, a protected liberty interest arises only from a transfer to harsher conditions of confinement when the inmate faces an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (internal quotations and citations omitted).

Courts in this District utilize four factors that guide their determination of whether a liberty interest exists due to an atypical and significant hardship, including:  (1) whether the segregation relates to and furthers a legitimate penological interest; (2) whether the conditions are extreme; (3) whether the placement extends the duration of the inmate's confinement; and (4) whether the placement is indeterminate. *See, e.g.*, *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1171 (D. Colo. 2010) (quoting *Estate of DiMarco v. Wyo. Dept. of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007)).  "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1248 (D. Colo. 2011) (quoting *DiMarco*, 473 F.3d at 1342).

First, Plaintiff alleges that Defendant Segovia placed him in the SHU as punishment for refusing to take Ivermectin, in violation of BOP policies that allow inmates to refuse medical treatment without repercussion. [#42 at ¶ 23, 27–28]. Mr. May also refutes Defendant Segovia's declaration that he placed Plaintiff in the SHU "on administrative detention status" to avoid reinfection, because Plaintiff did not have scabies and could not re-infect other inmates. [*Id.* at ¶ 25]. Plaintiff continues that Defendant Cordova informed him that he was placed in the SHU for defying Defendant Cordova's orders and that he would be "charged and shipped out from the Camp." [*Id.* at ¶ 28]. Defendants argue that Plaintiff's operative Complaint indicates that his placement in the SHU was for safety purposes, *i.e.*, to treat the current outbreak of scabies. [#59 at 10]. Nevertheless, construing the allegations in a light most favorable to Plaintiff, the Court concludes that it is at least plausible, at this phase, that Plaintiff's placement in the SHU was for punitive reasons, not for legitimate penological reasons. *See Silverstein v. Fed. Bureau Of Prisons*, 704 F. Supp. 2d 1077, 1092 (D. Colo. 2010) (explaining that at the Rule 12(b)(6) phase, the Court must accept as true the plaintiff's allegations that no legitimate penological interest existed and, therefore, could not make a determination on the issue at this phase).

Second, Plaintiff alleges that the conditions of the SHU are similar to solitary confinement "on a 24 hour, seven days a week basis, with no privileges permitted." [#42 at ¶ 23]. According to Plaintiff, placement in the SHU is for disciplinary purposes and inmates refer to the SHU as the "Hole." [*Id.*]. Defendants argue that the conditions of the SHU are not extreme. [#59 at 10]. While the evidentiary record may ultimately reveal that the SHU's conditions are not so extreme as to constitute an atypical and significant hardship in relation to ordinary life at the FPC, *cf. McMillan*, 813 F. Supp. 2d at 1248 (explaining that the conditions at

the FPC are harsh and restrictive, but do not give rise to a protected liberty interest), this Court draws all reasonable inferences in favor of Mr. May at this phase.  Accordingly, the court concludes that Mr. May has adequately stated this element, and declines to make any further determinations on this point without undertaking the proper evidentiary analysis.  *See Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (reversing the district court's dismissal of the plaintiff's Due Process claim, because the district court reached its decision without any evidence addressing whether the plaintiff's confinement was atypical and significant when compared to the conditions imposed on other prisoners).

Lastly, it does not appear that Plaintiff's placement in the SHU extended the duration of his confinement at FPC, or that his placement was indeterminate.  However, as discussed, the Court declines to dismiss Plaintiff's Due Process claim without reviewing any evidence as to whether his confinement to the SHU constituted an atypical and significant hardship.  *See Gaines v. Stenseng*, 292 F.3d 1222, 1225–26 (10th Cir. 2002) (reversing the district court's dismissal of the plaintiff's complaint, because the court "engaged in no such examination of the typical conditions of confinement" and, instead, determined "in a conclusory fashion" that the plaintiff's confinement was neither atypical nor significant) (citing *Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 809 (10th Cir. 1999)).  In addition, it is unclear at this juncture what level of due process Plaintiff was owed prior to his placement in the SHU; however, Plaintiff alleges that BOP Lieutenant Gutierrez informed him that he would remain in the SHU pending an investigation, but that no investigation occurred, no hearing was held, and that he was not informed of the BOP regulation he violated.  *See Matthews*, 744 F. Supp. 2d at 1173–74 (observing that if a liberty interest exists the inquiry turns to the level of due process owed,

which includes (1) a reasoned examination of the confinement; (2) an opportunity to receive notice and respond to the confinement; and (3) safety and security concerns are weighed as part of the confinement decision).  Moreover, "[w]hether the claim can ultimately survive scrutiny at the summary judgment stage is a matter the Court does not address at this time." *Rader v. Elec. Payment Sys.*, LLC, No. 11-CV-01482-MSK-CBS, 2012 WL 4336175, at *6 (D. Colo. Sept. 21, 2012).  Based on the foregoing, the Court declines to conclude at this phase that Plaintiff's confinement was neither atypical nor significant and, accordingly, **DENIES** Defendants' Motion to Dismiss as it relates to Plaintiff's Due Process claim against Defendant Segovia.  *See Robbins*, 519 F.3d at 1249 (noting that the plaintiffs' complaint need not contain all the necessary factual allegations to sustain a conclusion that the defendants violated clearly established law).  In so ruling, this Court makes no assessment as whether Mr. May's due process claim may survive summary judgment or whether he can ultimately prevail on such claim.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)   Defendant's Motion to Dismiss [#59] is **GRANTED IN PART and DENIED IN PART**;

(2)   Plaintiff's claims against Defendant Cordova are **DISMISSED without prejudice** under Rule 12(b)(1);

(3)   Plaintiff's Cruel and Unusual Punishment claim and Equal Protection claim against Defendant Segovia are **DISMISSED**;

(4)   Plaintiff's Due Process claim against Defendant Segovia **REMAINS**;

(5)    A Status Conference is **SET** for January 25, 2017 at 11:00 a.m. to discuss the pretrial schedule for this matter;[10] and

(6)    The Clerk of the Court will send a copy of this Order to the following:

Billy May
6600 West Highway 29
Burnet, TX 78611


DATED: January 3, 2017                          BY THE COURT:


                                                s/Nina Y. Wang_____
                                                United States Magistrate Judge

---

[10] To the extent that Mr. May would like to appear telephonically for this Status Conference, he is directed to file a Motion to Appear Telephonically no later than January 20, 2017.