# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00405-NYW

BILLY F. MAY,

    Plaintiff,

v.

JUAN SEGOVIA,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendant Juan Segovia's ("Defendant" or "Mr. Segovia") Motion for Summary Judgment (or "Motion"). [#77,[1] filed September 18, 2017]. The Motion is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated June 3, 2015 [#25]. The court has determined that oral argument will not materially assist in the resolution of this matter. Accordingly, upon careful review of the Motion and related briefing, the entire case file, and the applicable case law, the Motion for Summary Judgment is GRANTED.

## BACKGROUND

    The court has discussed the background of this matter in several prior orders, *see, e.g.*, [#41; #64], and discusses it here only as it pertains to the instant Motion for Summary Judgment.

---

[1] Where the court refers to the filings made in the Electronic Court Filing ("ECF") system in this action, it uses the convention [#___] and uses the page number as assigned by the ECF system. When citing from the transcript of a deposition, the court uses the ECF docket number, but cites to the page and line numbers as assigned in the original transcript.

Plaintiff Billy May ("Plaintiff" or "Mr. May") filed a *pro se* prisoner complaint in this case on February 27, 2015, while incarcerated at the Federal Prison Camp ("FPC") in Florence, Colorado.[2] [#1]. At the court's direction to refile using the appropriate form, Mr. May filed an Amended Complaint on March 16, 2015, asserting claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). [#4]. The Honorable Lewis T. Babcock issued an order to dismiss in part and to draw the case on March 19, 2015. [#7]. Judge Babcock dismissed Plaintiff's claims against the Federal Bureau of Prisons as barred by sovereign immunity, and drew Plaintiff's claims against Defendants George Santini and Frank Cordova to the undersigned Magistrate Judge. *See* [*id.* at 2].

On January 19, 2016, the undersigned granted Plaintiff's request to further amend his complaint—Plaintiff's Second Amended Complaint ("SAC") is the operative complaint in this matter. *See* [#41; #42]. The court construed Plaintiff's SAC as asserting three constitutional claims against Frank Cordova, a certified nurse practitioner, and Mr. Segovia, the former Camp Administrator of FPC; the SAC dismissed George Santini as a Defendant. [#42 at ¶¶ 2–3]. On March 21, 2016, Messrs. Cordova and Segovia moved to dismiss Plaintiff's SAC. [#59]. The court granted the Motion to Dismiss in part, and held that Mr. Cordova was immune from *Bivens* suits under the Public Health Service Act, 42 U.S.C. § 233, and that Plaintiff had failed to allege a plausible Eighth Amendment deliberate indifference claim or Fourteenth Amendment equal protection claim against Mr. Segovia. [#64]. The court, however, denied the Motion to Dismiss as to Plaintiff's Fifth Amendment procedural due process claim against Mr. Segovia. [*Id.*]. In

---

[2] Because Mr. May proceeds *pro se*, the court liberally construes his pleadings, but does not act as his advocate, and applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

his SAC, Plaintiff seeks immediate release from incarceration and punitive damages in the amount of $280,000.00. [#42 at 4].

Mr. Segovia now moves for summary judgment on Mr. May's remaining due process claim. [#77]. Mr. May has since filed his Response and Defendant his Reply. [#78; #84]. Because the Motion is ripe for resolution, the court considers the Parties' arguments below.

## LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence, viewed in a light most favorable to the nonmovant, presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

If the moving party demonstrates an absence of evidence supporting an essential element of the opposing party's claims, the burden shifts to the opposing party to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To satisfy this burden, the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other

3

similar admissible evidence demonstrating the need for a trial. *Id.*; *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [her] case or a denial of an opponent's allegation," or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

## MATERIAL FACTS

The following facts, drawn from the record and viewed in a light most favorable to Mr. May, are undisputed for purposes of the instant Motion. The events giving rise to this action occurred while Mr. May was incarcerated at the FPC in Florence, Colorado. [#42 at ¶ 1; #77-1 at ¶ 2]. At several points during 2014 and 2015, FPC experienced chronic outbreaks of scabies, [#42 at ¶¶ 7–23; #77-2 at ¶ 3], a parasitic infection of the skin caused by scabies mite, [#27-3 at 10]. Scabies is a highly contagious and communicable disease that can be transmitted though the sharing of clothing, bedding, or towels, as well as through skin-to-skin contact. *See* [*id.* at 10–11, 14–15; #77-2 at ¶ 2]. Though contracting scabies, it may up to six weeks before a patient exhibits symptoms of the infection, i.e., pruritis (itchy skin). [#23-7 at 10]. In the event of a scabies outbreak, FPC treats all symptomatic inmates and asymptomatic "close contacts," namely cellmates, with permethrin cream or by oral Ivermectin, and attempts to disinfect all linens and clothing within the facility. *See* [*id.* at 13–17; #77-2 at ¶ 2].

FPC's efforts to control and eradicate the scabies outbreak in 2014 failed, so Defendant and FPC executives developed a plan to treat FPC inmates again in early 2015. [#77 at ¶¶ 3–6]. According to this plan, all FPC inmates were to receive Ivermectin on January 8, 2015, and any

4

inmates who refused the medication were to be quarantined in the Special Housing Unit ("SHU"). *See* [*id.* at ¶ 6]. On January 8, 2015, FPC medical staff administered Ivermectin to all willing inmates; Defendant was the only member of the executive staff present during this procedure. *See* [#42 at ¶ 23; #77-2 at ¶ 7]. Mr. May was one of several inmates to refuse the Ivermectin; he explained that he previously suffered an allergic reaction to the first dose of Ivermectin and would not take the medication again. *See* [*id.* at ¶ 7; #77-4 at 49:2–12, 50:1–16]. Because of their refusals, Defendant transferred Plaintiff and the other inmates to the SHU. *See* [#27-3 at ¶ 6; #42 at ¶¶ 23–27; #77-2 at ¶ 7; #77-4 at 49:22–50:2]. Plaintiff and the other inmates were to remain in the SHU until medically cleared by FPC medical staff. *See* [#77-2 at ¶ 9; #77-3 at 2].

While in the SHU, Plaintiff was placed on administrative detention status and received permethrin cream to treat any potential scabies infection. [#27-2 at 3; #77-3 at 7; #77-4 at 96:9–24]. According to Plaintiff, his cell in the SHU was approximately 10 feet by 15 feet, and included a window looking into a courtyard, two beds, a table, two steel benches, a washbasin, a toilet, and a shower. *See* [#77-4 at 63:2–7, 63:16–19, 65:13–21]. He also had the ability to communicate with SHU guards, [*id.* at 68:1–8], and received at least three meals per day, [*id.* at 75:23–76:18]. However, Mr. May's placement in the SHU resulted in the loss of his personal items and privileges, aside from necessary hygienic items, *see* [*id.* at 66:7–24], and, for at least the first 24 hours, Mr. May was permitted to wear only his underwear and a tee-shirt, and was provided only a sheet to stay warm, *see* [*id.* at 82:4–21]. FPC later provided Mr. May a jumpsuit and shower shoes. *See* [#77-4 at 66:22–24, 67:3–11].

Mr. May remained in the SHU until February 4, 2015, before being cleared by medical staff. *See* [#77-3 at 2; #77-4 at 62:23–63:1; #77-5 at ¶¶ 19, 21; #77-6 at 4]. Prior to his release,

FPC personnel conducted weekly visits to the SHU and FPC medical staff conducted daily visits to the SHU. *See* [#77-3; #77-5 at ¶¶ 25–26; #77-6 at 6–10; #77-7 through #77-9; #77-10]. Plaintiff also had access to administrative remedy procedures though he did not receive the appropriate forms until after several days in the SHU. *See* [#77-1 at 17; #77-4 at 98:18–23; #78 at 1]. Nonetheless, Plaintiff filed 5 formal administrative grievances while housed in the SHU. *See* [#77-1 at 17–19]. Following his release from the SHU, Plaintiff filed an additional 24 formal administrative grievances prior to his release from custody in November 2015, *see* [*id.* at 19–31]; however, none of these grievances, nor the 5 filed while housed in the SHU, dealt with his placement in the SHU, conditions in the SHU, or the denial of a hearing upon his placement in the SHU, *see* [*id.* at ¶¶ 11–16 (detailing Mr. May's grievances)]. Mr. May filed the instant action on February 27, 2015. [#1]. Mr. May was released from incarceration no later than November 9, 2015.[3] [#37].

## ANALYSIS

**I.    Exhaustion of Administrative Remedies**

Defendant first moves for summary judgment due to Plaintiff's failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [#77; #84]. Defendant bears the burden of proving this affirmative defense by a preponderance of the evidence. *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). Because the court concludes that Mr. May failed to exhaust his administrative remedies, it focuses solely on this argument and does not consider Defendant's merits-based arguments for summary judgment. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1141 (10th Cir. 2005)

---

[3]    Mr. May's release moots his requested prospective injunctive relief. *See McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999). Nevertheless, he can continue to seek punitive damages for the violation of his constitutional rights pursuant to his *Bivens* claim. *Carlson v. Green*, 446 U.S. 14, 22 (1980).

(explaining, "the plain language of the statutory text [of the PLRA] does not allow the court to skip ahead to the merits of the suit," except in limited circumstances under 42 U.S.C. § 1997e(c)(2) where the claim is frivolous on its face).[4]

   A.   Does the PLRA Apply to Mr. May?

The PLRA requires prisoners to exhaust administrative remedies before filing a civil rights action. The statute provides, "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that prisoners must exhaust administrative remedies before filing a lawsuit regardless of the type of relief prayed for in the complaint). Exhaustion of administrative remedies is mandatory and is intended to give corrections officials an opportunity to address complaints internally before initiation of a federal lawsuit. *See Woodford*, 548 U.S. at 93.

As noted above, Mr. May was released from custody no later than November 9, 2015, almost nine months after initiating this action. *Compare* [#1] *with* [#37]. Several Circuits, including the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit"), have held that the PLRA's exhaustion provision does not apply to individuals who have already been released at the time of filing. *See Norton v. The City of Marietta, OK*, 432 F.3d 1145, 1150 (10th Cir. 2005); *Caddell v. Livingston*, No. 4:14-CV-3323, 2015 WL 1247003, at *2 (S.D. Tex. Mar. 17, 2015) (collecting cases). But *Norton* does not resolve the issue at hand because Mr. Norton

---

[4] Such limited circumstances are inapplicable to this matter.

7

had been released from incarceration prior to the initiation of his action. *See Norton*, 432 F.3d at 1148. As explained above, in this action, Mr. May filed his initial complaint on February 27, 2015, while incarcerated at FPC, but filed his operative SAC on January 19, 2016, after his release from FPC. *See* [#42].

Recently, the Ninth Circuit held that a plaintiff's third amended complaint, filed after his release from custody, controlled the exhaustion inquiry, because a supplemental complaint under Rule 15(d) supersedes any earlier complaint thereby "obviat[ing] an exhaustion defense." *Jackson v. Fong*, 870 F.3d 928, 933–34 (9th Cir. 2017). In so holding, the Ninth Circuit relied on its own precedent that allows plaintiffs to supplement their complaint under Rule 15(d) to include new claims that they had exhausted after filing suit. *See, e.g.*, *Cano v. Taylor*, 739 F.3d 1214, 1221 (9th Cir. 2014) (vacating district court's dismissal of prisoner's claims "because it was based on the determination that Cano had not exhausted his administrative remedies prior to the filing of his initial complaint, rather than his amended complaint."); *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("Defendants' argument that the PLRA requires the newly-added claims in the SAC to have been exhausted before the original complaint was 'brought' on January 4, 2002, fails because it ignores the general rule of pleading that the SAC completely supersedes any earlier complaint, rendering the original complaint non-existent and, thus, its filing date irrelevant."). The Parties point to, and this court could find, no similar precedent from this Circuit.

As the Ninth Circuit in *Jackson* acknowledged, several Circuits and Districts have held the PLRA's exhaustion requirement applicable even if a plaintiff amends his complaint after his release from custody, because the plaintiff's status at the time he filed the initial complaint controls the exhaustion analysis. *See, e.g.*, *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F.

App'x 170, 176 (3d Cir. 2013) (unpublished) (explaining, "we have held that the exhaustion requirement will continue to apply, even after a prisoner has been released, when the former prisoner amends a complaint filed while he was in prison." (citing *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) ("Although Ahmed would have been free of the strictures of the PLRA if he had filed a timely complaint after his release from prison, he is bound by the PLRA because his suit was filed . . . almost three years before he was released from prison."))); *Jackson v. Gandy*, 877 F. Supp. 2d 159, 175–76 (D.N.J. 2012) (holding, "the filing of an amended complaint after [the plaintiff] was released does not save the original action from dismissal for failure to exhaust." (relying on *Harris v. Garner*, 216 F.3d 970, 981, 985 (11th Cir. 2000) (holding the filing of an amended complaint after the plaintiffs were released from custody did not overcome the PLRA's exhaustion requirements))); *Butler v. Suffolk County*, 289 F.R.D. 80, 93 n.6 (E.D.N.Y. 2013) (same (collecting cases)). The court finds this reasoning persuasive.

Plaintiff's SAC did not attempt to incorporate newly exhausted claims under Rule 15(d) or any new claims at all; rather, he added Mr. Segovia as a Defendant, dropped any claim relating to his denial of an Epi-pen and Benadryl, and attempted to bolster his allegations of personal participation in response to the Defendants' Motion to Dismiss. *See* [#41 at 4–5]. Mr. May still proceeds with the ***same*** due process claim regarding his placement in the SHU, which was the basis for his initial complaint. *Compare* [#1] *with* [#42]. Because Mr. May's SAC relates solely to his due process claim, filed while he was incarcerated, the court concludes that he cannot now overcome the exhaustion requirement by merely amending his complaint after his release from custody. *Cf. Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("Allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion

requirement meaningless and impose an unnecessary burden on the judicial system."). This conclusion is consistent with the Tenth Circuit's holding in *Norton* that the plaintiff's status at the time of filing a claim controls whether the PLRA exhaustion requirements apply.

### B. Did Mr. May Exhaust His Administrative Remedies?

The PLRA requires only that prisoners exhaust *available* remedies. 42 U.S.C. § 1997e(a) ("No action shall be brought . . . until such administrative remedies as are available are exhausted.") (emphasis added). The Tenth Circuit interprets this provision to mean that if an administrative remedy is not available, an inmate cannot be required to exhaust it. *Tuckel v. Grover*, 660 F.3d 1249, 1252–53 (10th Cir. 2011) (holding an administrative remedy is not available when prison officials prohibit inmates from filing grievances through threats or intimidation of serious bodily harm). A remedy is "available" under the PLRA if it affords "the possibility of some relief for the action complained of." *Booth*, 532 U.S. at 738. An administrative remedy is not "available" under the PLRA if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (holding the prison official's rejection of an inmate's grievance appeal in toto rendered the final step of exhaustion unavailable); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (a prison official's failure to respond to a grievance within prescribed time limit renders an administrative remedy unavailable). Based on this principle, the court must "ensure that any defects in exhaustion [are] not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

#### 1. BOP Four-Tiered Administrative Remedy Program

The BOP provides a four-tiered Administrative Remedy Program for inmate grievances, which is codified at 28 C.F.R. § 542.10 *et seq.* The first tier requires informal resolution with

prison staff, which the prisoner requests with a form commonly known as a BP-8. *See* 28 C.F.R. § 542.13(a). A prisoner must obtain this form from his correctional counselor. The regulations allow the prisoner twenty days from the date of the incident to complete the informal resolution and file a formal Request for Administrative Remedy, if necessary. *See* 28 C.F.R. § 542.14. The prisoner must submit the formal inquiry, known as a BP-9 request, to the warden at the institution where the prisoner is incarcerated. *Id.* If dissatisfied with the warden's response, the prisoner may appeal to the Regional Director by filing a Regional Office Administrative Remedy Appeal, also known as a BP-10 request, within twenty days of the warden's dated response. *See* 28 C.F.R. § 542.15(a). Finally, the prisoner may file a Central Office Administrative Remedy Appeal, known as a BP-11 request, with the BOP's Office of General Counsel within thirty days of the Regional Office's denial. *Id.* At any level, an official's failure to respond within the time allotted constitutes a denial of the request or appeal. 28 C.F.R. § 542.18.

The BOP regularly maintains records of administrative complaints filed by inmates under the Bureau Administrative Remedy Program in a database known as SENTRY. *See* [#77-1 at ¶ 7]. The BOP supplied, through the Declaration of Belinda Shelton, a Paralegal Specialist at the Federal Correctional Complex (FCC) in Florence, Colorado, a summarized account of every grievance Plaintiff filed since his placement in the SHU on January 8, 2015, to his release in November 2015. *See* [#77-1].

### 2. Mr. May's Complaints

In support of Defendant's Motion for Summary Judgment, Ms. Shelton attested that none of Mr. May's 29 grievances relate to his remaining due process claim. *See* [*id.* at ¶¶ 11–16]. Plaintiff responds to the Motion by stating that he could not exhaust his administrative remedies, because he was "denied his rights to the forms to file an administrative remedy for being placed

in the SHU without cause or a hearing which he requested on day one (1) (and everyday thereafter), and was denied those forms until the 9th day in the SHU." [#78 at 1]. Mr. May also contends that the "BOP's scanning of outgoing legal mail on a bio-scanner . . . which would black out the labels . . . of any outgoing mail scanned causing such mail to be returned undeliverable was intentionally done to cause administrative remedy filings to be late[.]" [*Id.* at 2]. Respectfully, the court concludes that Plaintiff fails to create a genuine issue of material fact that the administrative grievance process was unavailable to him.

The SENTRY report attached as Attachment 3 to Ms. Shelton's Declaration confirms that each of Mr. May's grievances dealt with a bevy of separate and unrelated issues. [*Id.* at ¶¶ 12–16]. For example, 20 of the 29 grievances dealt with an alleged assault by an officer while Mr. May was asleep; inadequate medical treatment for allergies; delay and improper treatment for an "eye issue"; improper processing and handling of his mail; falsification of records; request for an "eye issue to be fixed"; request for medication "for his illness"; and an appeal of a Unit Disciplinary Committee report. *See* [*id.* at ¶ 13; *id.* at 16–31 (Mr. May's SENTRY report)]; *cf.* [#77-10 (February 20, 2015 grievance relating to an untreated eye issue)]. The remaining 9 grievances dealt with a "Staff Misconduct Allegation." *See* [*id.* at ¶ 14]. However, none of these concerned Plaintiff's placement in the SHU without a hearing, or any allegation that FPC officials denied Mr. May the proper grievance forms while housed in the SHU. Rather, AR Nos. 799231-F4, 799231-R1, 799231-A1, and 799231-A2 relate to a clinical encounter from October 2, 2014; AR Nos. 803656-R1 and 803656-A1 relate to the denial of a self-carry Epi-pen and Benadryl in October 2014; and AR Nos. 807082-R1 and 807082-A1 relate to an alleged failure to provide medical assistance during an emergency situation regarding allergies in November/December 2014, presumably Plaintiff's allergic reaction to Ivermectin. *See* [*id.* at ¶

15; *id.* at 16–31].[5] All of these grievances concern incidences that occurred prior to Mr. May's placement in the SHU.

It is undisputed that Plaintiff did not receive access to the proper grievance forms until several days after his placement in the SHU though it is unclear exactly when Plaintiff received the necessary forms. *Compare* [#77-1 at 17 (SENTRY report identifying AR No. 797140-R3 as being received January 12, 2015)] *with* [#77-4 at 98:18–23 (Plaintiff testifying that he did not receive the necessary forms until his thirteenth day in the SHU)] *and* [#78 at 1, 3–4 (arguing that he did not receive the necessary grievance forms until his ninth day in the SHU]. Even construing the evidence in a light most favorable to Plaintiff—that he did not receive the necessary grievance forms until his thirteenth day in the SHU—the record reflects that Plaintiff nonetheless filed grievances while housed in the SHU, and continued to do so, until his release from custody, but none of these grievances related to his placement in, or the conditions of, the SHU on January 8, 2015. *See Coates v. Fed. Bureau of Prisons*, No. 15-CV-01109-PAB-NYW, 2015 WL 9899139, at *6 (D. Colo. Dec. 31, 2015) (concluding that the plaintiff failed to explain how administrative grievances were unavailable when he filed two grievances concerning separate issues); *Huffman v. Allred*, No. 11-CV-01459-CMA-KLM, 2013 WL 424779, at *6 (D. Colo. Jan. 10, 2013) (concluding that an inmate's contentions that administrative remedies were unavailable due to facility lockdowns or officials locking grievance forms in their offices were insufficient, as the plaintiff was "free to submit grievances at all other times."). Moreover, pursuant to BOP policy, Mr. May had 20 days from the date of the issue to file a written Administrative Remedy Request, *see* 28 C.F.R. § 542.14(a); thus, even a 13-day delay in receiving the proper grievance forms would not preclude Plaintiff from submitting the proper

---

[5] The ninth entry, AR No. 808518-F1, was marked "void" because it was duplicative of an earlier grievance. *See* [#77-1 at ¶ 16].

13

grievance(s) regarding his confinement in the SHU.  *Cf. Thomas v. U.S. Bureau of Prisons*, 282 F. App'x 701, 704 (10th Cir. 2008) (unpublished) (holding as untimely and insufficient to satisfy the PLRA's exhaustion requirement the plaintiff's written Administrative Remedy Request submitted more than 20 days after the alleged incident giving rise to the complaint).  While "a prisoner lacks 'available' remedies where prison officials deny him or her the necessary grievance forms," *Hoover v. West*, 93 F. App'x 177, 181 (10th Cir. 2004) (unpublished) (citation omitted), this does not appear to be the case here.  Based on the evidence in the record, it appears that, at most, there was only a delay in providing Mr. May with the requisite forms.

Mr. May's averments that FPC officials intentionally delayed the mailing and/or processing of inmate grievances are equally unavailing.  This is because Plaintiff's "non-specific statements regarding the cause of his admitted failure to exhaust his administrative remedies are insufficient to survive summary judgment."  *Coates*, 2015 WL 9899139, at *6.  That is, once Defendant carries his initial burden on the exhaustion defense, the burden shifts to Mr. May to demonstrate with specificity that there is a genuine issue of material fact.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact.").  Yet, Mr. May directs the court to no evidence demonstrating how, when, and which of his administrative grievances were intentionally obstructed by FPC officials, let alone Mr. Segovia.  While this court recognizes, and in no way discounts, the potential asymmetry of information between the parties and the potential challenges faced by Mr. May in eliciting evidence to support his assertions, bald allegations cannot preclude summary judgment and this court cannot excuse him from the requirements of Rule 56.  *See Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) ("[The plaintiff] claims only that he was hampered in exhausting his remedies and proving that

he had exhausted, because he was denied access to and storage space for his legal materials. Bald allegations cannot preclude summary judgment."); *accord Wilson v. Bezona*, No. 10-CV-00756-REB-KLM, 2011 WL 7425472, at *6 (D. Colo. May 23, 2011) ("The conclusory assertions in Plaintiff's Response that he was not afforded any method of making copies is not competent summary judgment evidence. . . . The [Tenth Circuit] has clearly explained that an inmate plaintiff must put forth some evidence that prison officials interfered with his ability to properly exhaust his administrative remedies if he seeks to have his failure to exhaust excused."). The court therefore finds that Mr. May has not provided facts sufficient to make a showing that there is a genuine issue of material fact that he was, in fact, denied access to the administrative grievance process. Accordingly, the affirmative defense of failure to exhaust administrative remedies bars his claim, and Defendant's Motion for Summary Judgment is GRANTED.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment [#77] is **GRANTED** in favor of Defendant Juan Segovia and against Plaintiff Billy May;

(2) Plaintiff's remaining due process claim and Second Amended Complaint [#42] are **DISMISSED without prejudice**;[6]

---

[6] Typically, a conclusion that a plaintiff failed to exhaust his administrative remedies results in a dismissal without prejudice because "[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw." *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212–13 (10th Cir. 2003) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Here, however, Mr. May is no longer incarcerated at FPC, and any attempt to cure the procedural flaw will be untimely. *Cf. Jernigan*, 304 F.3d at 1033 ("Mr. Jernigan may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them"). Under such circumstances, several courts have held that dismissal should be with prejudice. *See Duffy v. Daugherty*, No. CIV-09-908-D, 2010 WL 2079674, at *2 n.6 (W.D. Okla. Apr. 22, 2010) (collecting cases). The Tenth Circuit, on at least one occasion, has upheld the dismissal of unexhausted claims with prejudice when prison authorities already rejected such claims as

(3) The Clerk of the Court shall **ENTER** Final Judgment in favor of Defendant Juan Segovia with each party bearing its own costs and fees,[7] and **TERMINATE** this matter accordingly;

(4) The Final Pretrial Conference set for December 12, 2017 at 9:30 a.m., the Trial Preparation Conference set for February 5, 2018 at 9:00 a.m., and the three-day Jury Trial set to commence on February 12, 2018 at 8:30 a.m. are hereby **VACATED**; and

(5) The Clerk of the Court will send a copy of this Order to the following:

Billy May
6600 West Highway 29
Burnet, TX 78611

---

untimely. *See Kikumura v. Osagie*, 461 F.3d 1269, 1290–91 (10th Cir. 2006) (noting, "the inmate's failure to exhaust is no longer a temporary, curable, procedural flaw.") *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) *as explained in Robbins v. Oklahoma*, 519 F.3d 1242, 1246–47 (10th Cir. 2008).

Defendant asks this court to apply *Kikumura* to Mr. May's remaining due process claim and SAC, because any future grievances are untimely. [#77 at 11 n.1]. The court, however, declines to do so, as several courts in this District have clarified that a prerequisite to dismissal with prejudice is the prison authorities' rejection of a plaintiff's grievances as untimely. *See e.g.*, *Saleh v. Wiley*, No. 09-CV-02563-PAB-KLM, 2012 WL 4356221, at *11 n.2 (D. Colo. June 19, 2012); *Arocho v. Lappin*, No. 07-CV-02603-REB-KLM, 2011 WL 2292187, at *14 n.8 (D. Colo. Apr. 21, 2011); *accord Van Houten v. Marlett*, 330 F. App'x 161, 163 (10th Cir. 2009) (unpublished) (affirming the dismissal with prejudice of the plaintiff's unexhausted claims where the prison authorities had rejected those grievances as untimely). No such showing has been made here; therefore, dismissal without prejudice is appropriate. *See Martinez v. Guadalupe County*, 200 F. Supp. 3d 1216, 1265 (D.N.M. 2016) (dismissing the plaintiff's unexhausted claims without prejudice, despite the plaintiff no longer being incarcerated).

[7] While costs should generally "be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), the district court may in its discretion decline to award costs where a "valid reason" exists for the decision. *See, e.g., In re Williams Securities Litigation-WCG Subclass*, 558 F.3d 1144, (10th Cir. 2009) (citations omitted). Given that the court considered only the affirmative defense of exhaustion of administrative remedies and did not address the merits of Plaintiff's claim, the court declines to award fees and costs. *See Cantrell v. Int'l Bhd. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 459 (10th Cir. 1995) (noting that there is no abuse of discretion when the district court denies fees where the "issues are close and difficult," or where the prevailing party is only partially successful).

16

DATED: November 16, 2017                    BY THE COURT:

                                            s/Nina Y. Wang_____
                                            Nina Y. Wang
                                            United States Magistrate Judge